<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BIANCA M. DIAMANTE,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.:  2:17-cv-08059 (PAZ)<br><br>**OPINION** |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
P.O. BOX 1798
RAHWAY, N.J.  07065
        On behalf of Plaintiff

STEPHEN M. BALL
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, SIXTH FLOOR
PHILADELPHIA, P.A.  19123
        On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Bianca M. Diamante for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.) and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42

U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge

1

("ALJ") denying the applications; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled after March 21, 2014 and remands the case for further proceedings in accordance with the accompanying Order.

## I.    PROCEDURAL HISTORY

On November 12, 2013, Plaintiff protectively filed applications for DIB and SSI alleging a disability onset date of March 29, 2011.  (R. 160-69.)[2]  On April 7, 2014, the Commissioner determined that Plaintiff was not disabled and denied the applications.  (R. 91-92.)  On June 3, 2014, Plaintiff's applications were denied on reconsideration.  (R. 115-16.)  On March 1, 2016, an ALJ held a hearing on Plaintiff's applications; Plaintiff was represented by counsel at the hearing. (R. 43-68.)  On June 2, 2016, the ALJ issued a decision finding that Plaintiff was disabled from March 29, 2011 through March 21, 2014, and that Plaintiff's disability ended on March 21, 2014 because of medical improvement.  (R. 19-42.)  On August 7, 2017, the Appeals Council denied Plaintiff's request for review, thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  (R. 1-6.)  On October 10, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On May 9, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C.

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security for a six-year term that expires on January 19, 2025.  Mr. Saul is therefore substituted as Defendant in his official capacity.

[2] "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 6.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 10.[3]  On December 25, 2018, the case was reassigned to the undersigned Magistrate Judge.  ECF No. 19.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion."  *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000));

4

*see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed

and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays.  *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits."  *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. §§ 404.1505(a), 416.905(a).[4]  An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Thus, an impairment can be established by objective medical evidence

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act.  Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs.  *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted).  The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion.  *Id*. §§ 404.1521, 416.921.

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5]  The claimant bears the burden of proof at Steps One through Four.  At Step Five, the burden shifts to the Commissioner. *Id*. §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014).  At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step.  20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit.  *Id*. §§ 404.1572(a) & (b), 416.972(a) & (b).  If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities.  An impairment or combination of impairments is not severe if the claimant has a slight

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id.* §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id.* §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id.* §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* §§ 404.1569a(a) & (b), 416.969a(b). Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing postural or manipulative functions such as reaching, stooping, climbing, crawling, crouching, handling, or fingering; difficulty tolerating environmental or physical features of certain work settings such as dust or fumes; or difficulty maintaining concentration or understanding detailed instructions. *Id.* at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). The Grid Rules reflect various combinations of RFC, age, education, and work experience, and direct a finding of disabled or not disabled for each combination. If the claimant also has any non-exertional limitations or cannot perform

substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations. *Id.* §§ 404.1569a(d), 416.969a(d). If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id.* §§ 404.1569a(c), 416.969a(c).

If the claimant is found disabled during the five-step sequential inquiry, the ALJ must also determine if the disability continues through the date of decision. The process for doing so incorporates much of the five-step sequential inquiry described above but adds some intermediate steps specifically directed to the issue of whether there has been a medical improvement – making for a separate but overlapping eight-step sequential inquiry. *See* 20 C.F.R. §§ 404.1594, 416.994.

At Step One, the ALJ must determine if the claimant is able to perform substantial gainful activity. If so, the claimant is no longer disabled.[6] If not, the analysis proceeds to Step Two. At Step Two, the ALJ must determine if the claimant has an impairment or combination of impairments that meets or medically equals the severity of a Listing. If so, the claimant's disability continues. If not, the analysis proceeds to Step Three. At Step Three, the ALJ must determine if medical improvement has occurred. Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs, or laboratory findings. If medical improvement has occurred, the analysis proceeds to Step Four. If not, the analysis proceeds to Step Five. At Step Four, the ALJ must determine whether the medical improvement is related to the ability to work – i.e., whether the medical improvement results in an increase in the claimant's capacity to perform basic work activities. If so, the analysis proceeds to Step Six.

---

[6] This step applies only to DIB claims and not to SSI claims. *See Schwartz v. Colvin*, No. 12-cv-01070 (YK), 2014 WL 257846, at * (M.D. Pa. Jan. 23, 2014) (comparing 20 C.F.R. § 404.1594(f)(1)-(8)) and 20 C.F.R. § 416.994(b)(5)(i)-(vii)).

If not, the analysis proceeds to Step Five.  At Step Five, the ALJ must determine if an exception to medical improvement applies (there are two groups of exceptions).  If no exception applies, the claimant's disability continues.  If an exception from the first group applies, the analysis proceeds to Step Six.  If an exception from the second group applies, the claimant is no longer disabled.  At Step Six, the ALJ must determine whether all the claimant's current impairments in combination are severe – i.e., whether they significantly limit the claimant's ability to do basic work activities. If so, the analysis proceeds to Step Seven.  If not, the claimant is no longer disabled.  At Step Seven, the ALJ must assess the claimant's RFC and determine whether the claimant can perform past relevant work.  If so, the claimant is no longer disabled.  If not, the analysis proceeds to Step Eight.  At Step Eight, the ALJ must determine whether the claimant can perform other work considering the claimant's age, education, past work experience, and RFC.  If so, the claimant is no longer disabled.  If not, the claimant remains disabled.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was forty-one years old on the alleged onset date of March 29, 2011.[7]  At Step One of the five-step sequential inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 27.)  At Step Two, the ALJ found that Plaintiff had the severe impairment of bipolar disorder for the period between the alleged onset date through March 21, 2014 (the "Disability Period").  (R. 27.)  At Step Three, the ALJ found that during the Disability Period Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 27.)  At Step Four, the ALJ found that during

---

[7] The relevant period for Plaintiff's DIB application is March 29, 2011 through December 31, 2012 (date last insured).  (R. 27.)  *See* 20 C.F.R. § 131.  The relevant period for Plaintiff's SSI application is November 12, 2013 (application date) through June 2, 2016 (decision date).  *See* 20 C.F.R. § 416.202.  These differences are not material to the Court's analysis of Plaintiff's appeal.

the Disability Period Plaintiff had the residual functional capacity to perform a full range of work at all levels subject to various non-exertional limitations. (R. 28.) The ALJ also found at Step Four that during the Disability Period Plaintiff was unable to perform her past relevant work as a telephone marketer and data entry. (R. 30.) At Step Five, the ALJ found that during the Disability Period no jobs existed in significant numbers in the national economy that could be performed by an individual with Plaintiff's age, education, work experience, and RFC. (R. 30.) The ALJ concluded that Plaintiff was not disabled during the Disability Period. (R. 31.)

The ALJ next applied the eight-step sequential inquiry for determining whether Plaintiff's disability continued between March 22, 2014 and the June 2, 2016 decision date ("Relevant Period"). At Step One, the ALJ found that during the Relevant Period Plaintiff had not engaged in substantial gainful activity. (R. 27.) At Step Two, the ALJ found that during the Relevant Period Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing. (R. 31.) At Step Three, the ALJ found that medical improvement occurred as of March 22, 2014. (R. 33.) At Step Four, the ALJ found that Plaintiff's medical improvement was related to the ability to work. (R. 33.) Accordingly, the ALJ skipped Step Five. At Step Six, the ALJ found that during the Relevant Period Plaintiff had the severe impairment of bipolar disorder. (R. 31.) At Step Seven, the ALJ found that during the Relevant Period Plaintiff was able to perform a full range of work at all exertional levels subject to various non-exertional limitations. (R. 34.) Also at Step Seven, the ALJ found that during the Relevant Period Plaintiff was unable to perform past relevant work. (R. 36.) At Step Eight, the ALJ found that during the Relevant Period at least three jobs – inspector, hand packager, and laundry worker – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC. (R. 36-37.) The ALJ therefore found

that Plaintiff's disability ended on March 21, 2014 and that Plaintiff was not disabled during the Relevant Period. (R. 37.)

Plaintiff's brief is curious in that it begins with an assertion of alleged errors in the ALJ's five-step sequential inquiry for the Disability Period – an analysis that resulted in a disability finding for the period between March 29, 2011 and March 21, 2014. Specifically, Plaintiff complains that the ALJ should have found that Plaintiff was disabled at Step Three during the Disability Period because her mental impairment met or was medically equivalent to Listing 12.04 (*see* ECF No. 23 at 17-27); and that the ALJ's RFC finding at Step Four was "offered without the slightest explanation" (*id*. at 28). Plaintiff does not ask the Court to reverse the ALJ's disability finding for the Disability Period. Instead, Plaintiff seeks a reversal of the ALJ's finding that she was not disabled after March 21, 2014 – i.e., during the Relevant Period – and asks for a remand for payment of benefits or further proceedings. Plaintiff inexplicably does not articulate the bases for her requested relief within the eight-step sequential inquiry framework applicable to the Relevant Period. As best the Court can discern, Plaintiff contends that the ALJ committed reversible error during the eight-step sequential inquiry: (1) at Step Two, by not finding that Plaintiff's mental impairment met or was medically equivalent to Listing 12.04; (2) at Step Three, by finding that medical improvement had occurred; and (3) at Step Seven, because the RFC finding was not supported by substantial evidence.[8] Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected

---

[8] To the extent Plaintiff argues that the ALJ erred at Step Eight by failing to include additional limitations in the hypothetical questions presented to the VE, the Court finds that such argument simply restates Plaintiff's argument that the ALJ erred at Step Seven in crafting the RFC finding. *Cf. Rutherford*, 399 F.3d at 554 n.8.

consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>Medical Evidence.</u>

#### 1.    Treating Providers.

Treatment records from Jersey City Medical Center reflect that Plaintiff was hospitalized in March 2011, July 2011, and August 2013.[9]  Plaintiff was hospitalized from March 30, 2011 to April 12, 2011 after neighbors called the police upon hearing her threaten to kill herself.  Her GAF score at admission was assessed at 25.  She was diagnosed with bipolar disorder, placed in therapy for the duration of her admission, and prescribed anti-psychotic medications.  Her GAF score at discharge was assessed at 55.  Plaintiff was hospitalized from July 3, 2011 to July 12, 2011 after displaying paranoia and delusions.  Her GAF score on admission was assessed at 25.  Treatment records indicate that she was non-compliant with medication after her previous hospitalization.  Her GAF score at discharge was assessed at 55.  At some point in 2013, Plaintiff stopped taking her medication as prescribed after reporting side-effects such as body stiffness.  In August 2013, she was hospitalized for 12 days after demonstrating violent behavior towards her roommate and grabbing a butcher knife in the presence of police.  Her GAF score at admission was assessed at 35.  She refused to take her medication as prescribed for two days during her hospitalization but ultimately agreed to do so.  Her GAF score at discharge was assessed at 65.  (R. 274-804.)

---

[9] Plaintiff asserts that she was hospitalized six times because of her mental impairment.  *See* ECF No. 23 at n.14.  The Court observes that Plaintiff told the consultative examiner that she was also hospitalized after an attempted suicide at the age of 12, when she was fasting for a week at the age of 18, and when she had not slept or eaten for days at the age of 30.  (R. 805.)

From August to October 2013, Plaintiff participated in an acute partial hospitalization (APH) program from 9am to 3pm on Mondays through Fridays. Treatment records reflect that she made progress through group and individual counseling. By the end of the program, she was medication compliant; had consistent attendance; demonstrated stable, appropriate, and cooperative mood and behavior; and expressed willingness to take her medication as prescribed. (R. 564-88.) In October 2013, Plaintiff transferred out of the APH program and began monthly outpatient therapy (OPD). She stated during her initial session that she was "doing a job hunt." (R. 565.) In March 2014, it was noted that Plaintiff attended scheduled appointments, took her medication, and was stable. In September 2014, Plaintiff reported that she heard "some voices" after her daughter moved to Oregon but they were not intense, commanding, or bothersome. Plaintiff also stated that she had been out of medication for a few days because she could not get an appointment for a refill. In November 2014, her GAF score was assessed at 55-60. (R. 818-862.)

In September 2015, Plaintiff began an intensive outpatient program (IOP) that required 9 hours of combined individual and group sessions each week. Plaintiff stated during the initial session that she felt depressed and needed more support; she reported that a strained relationship with one of her daughters was a "major stressor." Treatment notes reflect that Plaintiff's condition was stable; she was calm and cooperative and exhibited no evidence of hallucinations. She enjoyed group sessions, where she was active in discussions and supportive toward fellow members. However, she often missed individual sessions because she had trouble leaving the apartment and wanted to sleep all day. In December 2015, it was agreed that she would participate in the program for a minimum of 6 hours each week. In January and February 2016, Plaintiff missed several individual sessions because of apartment inspections. It was agreed that Plaintiff should be

referred to a lower level of care and resume OPD. Her GAF score was assessed at 60. In March 2016, Plaintiff missed her first OPD appointment but requested prescription refills several days later. An advanced nurse practitioner provided the prescriptions and instructed Plaintiff to reschedule the OPD appointment. (R. 877-949.)

From August 2013 through February 2016, Plaintiff's pharmacy records indicate that she obtained regular refills of her medications. (R. 808-17.)

### 2.    Non-Treating Providers.

On March 22, 2014, Plaintiff underwent a consultative examination with Dr. Alec Roy (psychiatry). Plaintiff advised that she had taken anti-psychotic medications since 2011. She had fibroid surgery in 2013 and returned to work to find that she had been replaced. She was anxious to get out of the homeless shelter where she had been living since August 2013. She had a lot of energy and often had trouble sleeping. Dr. Roy noted that Plaintiff rocked a bit backwards and forwards in the chair; he opined that this behavior could be a side effect of Risperdal. Dr. Roy's mental evaluation findings included: normal speech and thinking processes; no evidence of hallucinations, paranoia or delusions; well-oriented to time, person, and place; no evidence of any serious immediate, intermediate, or long-term memory problems; ability to follow conversations and instructions; and ability to spell accurately and do simple calculations. Dr. Roy diagnosed bipolar disorder in partial remission and assessed a GAF score of 53. (R. 805-07.)

In April 2014, State Agency reviewing consultants opined that Plaintiff met the paragraph A criteria for Listing 12.04 (Affective Disorders) but did not meet the criteria for paragraphs B or C. As to paragraph B, the reviewing consultants opined that Plaintiff had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and insufficient evidence to form

an opinion regarding repeated episodes of decompensation, each of extended duration. The reviewing consultants further opined that Plaintiff could understand and execute simple instructions; adequately maintain concentration, persistence, or pace; and adequately relate and adapt in simple, low contact work-like settings. (R. 69-90.) In June 2014, these opinions were affirmed on reconsideration. (R. 93-114.)

**B.    Non-Medical Evidence.**

In December 2013, Plaintiff submitted a Function Report and advised that she lived in a homeless shelter. She had trouble sleeping but had no problems with personal care. She used a phone alarm as a reminder to take her medications. She did not prepare any meals because residents were not allowed to cook at the shelter. She cleaned the shelter bathroom two or three times per month. She also did laundry twice per month. She went outside every day and could go out alone. She travelled on foot or by public transportation because she did not have a driver's license. She spent one or two hours every month shopping in stores for medicine and personal needs. She managed her own finances. She spent time walking, listening to music, watching television, and reading. She spent time with her mother and daughters every Sunday, and she attended church weekly. She did not have problems getting along with others. She had issues with understanding, memory, and concentration. Her mind went blank a lot, she had trouble with comprehension, and she needed things to be repeated. She could walk for forty-five minutes before needing to rest for five or ten minutes. She could pay attention for five or ten minutes. She could follow simple written instructions but might need to have spoken instructions repeated. She had no issues with authority figures but sometimes had a bad temper. When things went wrong, she prayed and fasted. She required a little bit of time to adopt to changes in routine. (R. 224-31.)

Also in December 2013, Diedra Hatcher submitted a Third-Party Function Report. Ms. Hatcher had lived with Plaintiff at the shelter since September 2013. Ms. Hatcher's report is consistent with Plaintiff's December 2013 Function Report. In response to multiple questions, Ms. Hatcher indicated that she was repeating what she had been told by Plaintiff. (R. 208-15.)

In May 2014, Plaintiff submitted another Function Report and advised that she had left the shelter and lived alone in an apartment. Other differences from her December 2014 Function Report included: she no longer required a phone alarm as a reminder to take her medications; she prepared her own meals every day; she tried to eat things like oatmeal, eggs, fruits, and vegetables because of weight gain from her medications; she spent an unspecified amount of time cleaning her apartment weekly; she spent about one hour every three to four days shopping for groceries in stores; and she read two books a week to keep her mind sharp. (R. 240-48.)

In March 2016, Plaintiff testified during the hearing in response to questioning from her counsel and the ALJ. The ALJ summarized Plaintiff's testimony as follows:

> The claimant alleged that she suffers from bipolar disorder and that this impairment affects her daily living and ability to perform basic work activities. The claimant testified that she spends a lot of time in her bed depressed, however she goes to church every Sunday for a couple of hours. She gets to church either on a bus or through a ride from her daughter. The claimant also stated that she is able to shop for groceries and do her own laundry. She testified that she is able to make herself shakes and eats a lot of fruits and vegetables. She also testified that she mops or cleans the floor sometimes, washes the dishes sometimes, and she is able to watch television a couple of hours per day. The claimant stated she is unable to work because she has a problem with her memory and concentration. She also stated that she has a lot of crying spells and was afraid to leave her apartment building thinking that she would not be let back in. However, she also stated that she gets along with her daughter. The claimant testified that her medications make her "loopy and foggy." She also testified that she was hospitalized three times for her mental impairment, twice in 2011 and once in 2013. (Hearing Testimony).

(R. 29.) The Court notes the following additional testimony by Plaintiff: she lived alone in an apartment; she received welfare benefits and Medicaid; she was first diagnosed as bipolar at age

18; she attended one of year of college; she last worked in 2013; she was taking Topamax, Risperdal, and Pojensa (sp); she was being treated by Dr. Vijan since October 2015; she was previously treated by attending physicians and nurse practitioners at Jersey City Medical Center psychiatric ward; in September 2015, she was delusional and thought that her daughter, who lived in Portland, was having a sexual relationship with Plaintiff's building manager and living in Plaintiff's building in a different apartment; at that point, she began a six-month intensive outpatient program (IOP) that she attended nine hours per week for the first four months but had to reduce to six hours per week for the last two months because of her depression; she went to the clinic once a month for prescription refills; she was not currently getting any therapy or counseling; at least twice a week she spent the entire day in bed; "sometimes" in church she heard "screams like in hell;" she initially gained eighty pounds from her medications but had since lost fifty pounds by exercise and healthy eating; and she took a one-hour nap every day. (R. 48-61.)

V.    **DISCUSSION**

A.    <u>**Local Civil Rule 9.1(e).**</u>

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record." L. Civ. R. 9.1(e)(5)(C). Plaintiff's thirty-two page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever. ECF No. 23 at 1-2; *see id.* at 3-32 (containing few, if any, record citations other than to the ALJ's decision). Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5). For example, there is no meaningful "statement of the issues presented for review." L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 23 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for

this Court is whether the Commissioner's decision is supported by substantial evidence"). As another example, there is no argument "divided into sections separately treating each issue." L. Civ. R. 9.1(e)(5)(D); *see* ECF No. 23 at (challenging various ALJ findings for the Relevant Period – medical improvement, Listings, and RFC – in an argument section entitled "The Decision Does Not Take A Longitudinal Overview Of Plaintiff's Severe Mental Impairment And Thus The Commissioner Cannot Carry Her Burden Of Proof"). An additional failing is that counsel's arguments are unnecessarily caustic.

Since May 4, 2018, the undersigned has decided thirty Social Security disability appeals in which the plaintiff was represented by the same law firm that represents the Plaintiff in the present case. The plaintiff's brief in each of those cases has had similar failings. It is not the Court's burden to sift through Plaintiff's muddled arguments to determine the bases for appeal and then comb through the record searching for support for those arguments. Plaintiff's counsel, the law firm of Langton & Alter, Esqs., has been notified that any brief filed after May 13, 2019 that does not comply with Local Civil Rule 9.1(e) will be rejected, and any fees for re-briefing will not be credited when considering the reasonableness of fees for successful appeals. *See Little v. Berryhill*, No. 2:17-cv-11708 (PAZ), 2019 U.S. Dist. LEXIS 82127, at *44-46 (D.N.J. May 13, 2019). The Court reiterates such notification. The Court will not require re-briefing in this case, but will consider the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of fees in this case and will adjust any such fees accordingly.

### B.    Step Two – Listings.

At Step Two, the ALJ found that during the Relevant Period Plaintiff did not have an impairment that meets or medically equals the severity of Listing, including Listing 12.04. Listing

12.04 (Affective Disorders) is met when the criteria of both paragraphs A and B are satisfied, or

when the criteria of only paragraph C are satisfied.[10]   The ALJ found that Plaintiff did not satisfy

either the paragraph B criteria or the paragraph C criteria.  (R. 32.)  Plaintiff contends that the

ALJ's Step Two finding was not supported by substantial evidence and that substantial evidence

supports a finding that she met or medically equaled Listing 12.04 during the Relevant Period.

### 1.     Paragraph A.

Plaintiff argues:

> [T]he seven considerations of the A criteria of listing 12.04A2a-g (bipolar disorder)
> were neither mentioned, considered or found to be present in or absent from the
> record.  The Court can and should safely assume that the ALJ found the presence
> of the requisite A criteria because the decision proceeds to issue findings in the B
> and C criteria, findings which would be both irrelevant and unnecessary had the A
> criteria not been deemed satisfied.

ECF No. 23 at 18.  Plaintiff is wrong in several respects.  First, Plaintiff appears to rely on Listing

12.04 as it currently exists and not as it existed when the ALJ's decision issued.[11]   Second, the

ALJ's silence cannot be construed as a finding.  Third, it was not necessary for the ALJ to discuss

paragraph A after finding that Plaintiff did not satisfy the criteria of paragraphs B or C.  *See*

*Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x at 813-14; *Nunez v. Comm'r of Soc. Sec.*, No.

2:14-cv-4664 (KM), 2015 WL 4770991, at *4 (D.N.J. Aug. 12, 2015).  The Court therefore finds

no error as to paragraph A.

---

[10] The Court analyzes all Listing criteria, as did the ALJ, as of June 2, 2016, the date of the ALJ's decision.
The applicable criteria are described in Social Security Administration Program Operations Manual System
("POMS")  DI  34132.011,  *Mental  Listings  from  09/29/16  to  01/16/17*,  available  at
http://policy.ssa.gov/poms.nsf/lnx/0434132011.

[11] *Compare* 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 12.04 *with* POMS DI 34132.011, Listing
12.04.

2.    **Paragraph B.**

To satisfy Paragraph B, a claimant must demonstrate marked limitations in at least two of the three functional categories or a marked limitation in one category together with repeated episodes of decompensation, each of extended duration.  *See* POMS DI 34132.011.  A marked limitation means more than moderate but less than extreme and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  *Id.*, Listing 12.00C (citing 20 C.F.R. § 404.1520a).  As to decompensation, "repeated episodes" of "extended duration" means three episodes within one year, or an average of once every four months, each lasting for at least two weeks.  *Id.*  The ALJ found:

> In activities of daily living, beginning March 22, 2014, the claimant has mild restriction.  The claimant does not have more than a mild restriction because she stated in her function report that she is able to bathe, prepare meals daily, do laundry every two weeks, and clean her apartment every week.  (9E [May 2014 Function Report]).
>
> In social functioning, beginning March 22, 2014, the claimant has mild difficulties. The claimant is not found to have more than mild difficulties because she reported in her function report that she sees her daughters and mother every Sunday.  (9E [May 2014 Function Report]).  The claimant's group therapy notes also reflect that the claimant was an active participant and that she was encouraging other group members.  (10F, pgs. 42, 52 [R. 908, 918]).
>
> With regard to concentration, persistence or pace, beginning March 22, 2014, the claimant has moderate difficulties.  The claimant does not have more than moderate difficulties because she stated in her function report that she is able to read two books a week and she testified that she is able to watch television a couple of hours per day.  (Hearing Testimony; 9E [May 2014 Function Report]).  The claimant was also able to perform simple calculations during her psychiatric consultative examination.  (4F, pg. 2 [R. 806]).  However, the claimant does have moderate difficulties because she testified that she suffers from side-effects after taking her medication that make her "loopy and foggy."

> As for episodes of decompensation, beginning March 22, 2014, the claimant has experienced no episodes of decompensation which have been of extended duration.

(R. 32.)[12]  Plaintiff does not dispute the ALJ's finding as to decompensation.  *See* ECF No. 23 at 25 ("[t]his is technically accurate if beside the point"); *id*. at 26 (acknowledging that decision is "technically correct with regard to the timing and duration of plaintiff's episodes of decompensation").  Rather, Plaintiff contends that substantial evidence supports a finding that she had a marked limitation in all three – and at least two – functional categories.

The Court finds no error in the ALJ's paragraph B finding regarding the functional categories.  But even if the finding were flawed, reversal is warranted only if the alleged errors were not harmless.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[A] remand is not required here because it would not affect the outcome of the case."); *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (plaintiff must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to [her/]his claims," including "affirmatively point[ing] to specific evidence that demonstrates [s/]he should succeed"); *Gullace v. Comm'r of Soc. Sec.*, No. 15-cv-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (citing *Woodson*).  Plaintiff has made no such showing here.

Plaintiff argues that she has a marked restriction in activities of daily living because she *lives* in a homeless shelter.  Specifically, Plaintiff argues:

> Finding "mild" B criteria restrictions in daily activities regarding a woman who was unable to maintain a residence and was placed in a homeless shelter where she was expected to perform cleaning chores as a condition of residence, seems to miss the point that plaintiff was not performing ordinary activities of daily living.

---

[12] The ALJ found during the Disability Period Plaintiff had *moderate* restriction in social functioning and *marked* restriction in concentration, persistence, or pace.   (R. 27.)

23

ECF No. 23 at 19.  Plaintiff omits that she lived in the homeless shelter only between her release from the hospital in August 2013 and no later than May 2014 when she moved into her own apartment – where she continued to live as of the decision date.  Plaintiff does not cite, nor can the Court identify, conflicting evidence overlooked by the ALJ.  The Court therefore finds that substantial evidence supports the ALJ's finding as to this functional category and, alternatively, that any error would be harmless because the Court cannot conclude that substantial evidence supports a finding of a *marked* restriction during the Relevant Period.

Plaintiff next argues that she has a marked limitation in social functioning because she has "'a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation'."  ECF No. 23 at 21 (quoting Listing 12.00C).  Plaintiff offers no specific examples but presumably refers to the incidents underlying Plaintiff's three hospitalizations.  Plaintiff also invokes the Third-Party Function Report of her roommate at the homeless shelter, Ms. Hatcher, who advised that Plaintiff "keeps to herself."  *Id*. at 22.  Plaintiff ignores that this evidence relates to the Disability Period.  The evidence related to the Relevant Period reflects Plaintiff's involvement with her daughters and her church, as well as "interact[ion] and active[] participat[ion] in group activities."  POMS DI 34132.011, Listing 12.00C.  Plaintiff does not cite, nor can the Court identify, conflicting evidence overlooked by the ALJ.  The Court therefore finds that substantial evidence supports the ALJ's finding as to this functional category and, alternatively, that any error would be harmless because the Court cannot conclude that substantial evidence supports a finding of a *marked* limitation during the Relevant Period.

Plaintiff's argument that she has a marked limitation in concentration, persistence, or pace rests primarily on the ALJ's finding for the Disability Period.  *See* ECF No. 23 at 18-19 ("The decision does not explain why paranoia and delusions, frequent psychiatric hospitalization and

assessments of global functioning (GAF scores) of 25 and 35 would not be amply indicative of an 'extreme' limitation in CPP.").  Plaintiff also invokes Ms. Hatcher's report that "it takes plaintiff 'longer to count'," that Plaintiff "'has trouble remembering things and sometimes has to read something 3 or 4 times to understand it'," and that Plaintiff "'says her mind goes blank a lot'." ECF No. 23 at 22 (citing R. 212-14).[13]  Plaintiff again ignores that this evidence relates to the Disability Period.  The Court finds that the evidence related to the Relevant Period and cited in the decision – including Plaintiff's May 2014 Function Report and the consultative examiner's report – supports the ALJ's finding of a moderate restriction as to this functional category.  The Court alternatively finds that any error would be harmless because, as noted above, the Court cannot conclude that substantial evidence supports a finding of a *marked* limitation during the Relevant Period in either of the remaining categories.

### 3. Paragraph C.

To satisfy Paragraph C, a claimant must demonstrate at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or

---

[13] Plaintiff complains that the ALJ's decision did not mention "Ms. Hatcher at all in its B criteria announcements and later completely rejects the Hatcher third party questionnaire during the RFC portion of the decision" because Ms. Hatcher had no medical training and could not considered a disinterested third party witness.  ECF No. 23 at 22-23 (citing R. 36).  Courts in this Circuit have repeatedly found that an ALJ's failure to weigh lay statements, although technically a violation of applicable legal standards, did not require remand because the statements would not have changed the outcome of the case – especially where the testimony was cumulative.  *See*, *e.g.*, *Lopez v. Comm'r of Soc. Sec.*, No. 15-cv-3759 (KLM), 2016 WL 7468100, at *15 (D.N.J. Dec. 27, 2016) (because omitted lay testimony was substantially cumulative of claimant's testimony, harmless error rule would have applied if remand not warranted on other grounds); *Buffington v. Comm'r of Soc. Sec.*, No. 12-cv-100 (JBS), 2013 WL 796311, at *9 (D.N.J. Mar. 4, 2013) (failure to assess lay testimony that is cumulative of Plaintiff's testimony not grounds for remand).  Ms. Hatcher's Third Party Function Report is substantially cumulative of Plaintiff's testimony as to the cursory description of the same symptoms and daily activities.  Moreover, Ms. Hatcher provided no information regarding the Relevant Period.  The Court therefore finds that any error by the ALJ regarding Ms. Hatcher was harmless.

change in environment would be predicted to cause the claimant to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement.  *See* POMS DI 34132.011.  The ALJ found that "the evidence fails to establish the presence of the 'paragraph C' criteria."  (R. 32.)  As discussed above, there is no evidence in the record that Plaintiff had repeated episodes of decompensation, each of extended duration.   Plaintiff argues with respect to the remaining paragraph C criteria:

> [T]he conclusory statements that plaintiff, who cannot maintain her own residence, lives in a shelter where her meals are provided and spends her days in partial hospitalization therapy, does not demonstrate that plaintiff suffers a residual disease process resulting in marginal adjustment or that the evidence doesn't amply demonstrate "a current history of one or more years' inability to function outside a highly supportive living arrangement" is counter-intuitive as well as incorrect.  If living in a shelter, where there are no bills or rent to pay, no meals to shop for or prepare and no household to maintain and where supervisors assign chores and decide bedtimes, does not constitute a "highly supportive living arrangement," the decision owes us some sort of explanation as to "why not" or "what would?".

ECF No. 23 at 26.  Plaintiff again ignores that, as of the decision date, she lived by herself in her own apartment for over two years.  This change in living arrangement supports the ALJ's finding. Plaintiff does not cite, nor can the Court identify, conflicting evidence overlooked by the ALJ. The Court therefore finds that substantial evidence supports the ALJ's paragraph C finding for the Relevant Period and, alternatively, that any error in this regard would be harmless.

### C.    **Step Three – Medical Improvement.**

At Step Three, the ALJ found that medical improvement occurred as of March 22, 2014.

(R. 33.)  Plaintiff argues that substantial evidence does not support this finding:

> This is a case in which the ALJ found "medical improvement" because, on the day that plaintiff saw the Commissioner's psychiatrist she wasn't symptomatic.  There is no longitudinal overview of plaintiff's long term mental condition and the reliance on a single psychiatric examination, 9 months before plaintiff required yet another psychiatric admission (her 6th) is entirely misplaced.

ECF No. 23 at 11; *see id.* at 29 ("[t]he decision leaves no doubt that [the consultative examiner's] report alone was the determining factor and the decisive date in the cessation of plaintiff's disability").[14]  The Court need not decide whether a consultative examiner's report by itself can serve as substantial evidence for a medical improvement finding.  In addition to Dr. Roy's March 2014 report, the ALJ's decision cited multiple treatment records from 2013 through 2016, Plaintiff's May 2014 Function Report, and Plaintiff's March 2016 hearing testimony.  (R. 33-35.) The Court therefore finds that substantial evidence supports the ALJ's medical improvement finding.

### D.    <u>Step Seven – RFC.</u>

At Step Seven, the ALJ found:

> [B]eginning March 22, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  the claimant is capable of unskilled work.  She can only tolerate occasional changes in the work setting and is capable of only occasional decision-making.  She cannot perform assembly line work and must work in an environment free of fast-paced production requirements.  She must have no interaction with the public and only occasional interaction with co-workers.  The claimant must be allowed off task 10% of the day and miss one day a month of work.

(R. 34.)  Plaintiff argues that "the entire internal rationale of the decision is devoid of neutrality and evidentiary consistency" because the RFC findings for the Disability Period and the Relevant Period are identical, except the former permitted Plaintiff to be off task 15% of the day.  ECF No. 23 at 29 (citing R. 28); *see id.* at 28 (Plaintiff was found disabled at Step Five during Disability Period only because "she might be 15% off-task (85% on task!) and the VE's opinion was that

---

[14] Contrary to Plaintiff's assertion, there is no record evidence that she required hospitalization after August 2013.  Plaintiff participated in an acute partial hospitalization (APH) program from August to October 2013 that required her attendance from 9am-3pm every weekday.

such an off-task rate would be unacceptable in the competitive market place"). That Plaintiff's counsel believes the RFC finding for the Disability Period should have included additional limitations attributable to Plaintiff's mental impairment is immaterial. The issue before the Court is whether substantial evidence supports the RFC finding for the Relevant Period.

The Court is concerned that the ALJ's decision omitted that Plaintiff was in an intensive outpatient program (IOP) from September 2015 through March 2016. This detail is important because the IOP obligated Plaintiff to undergo between six and nine hours of counseling every week. This omission makes it impossible for the Court determine whether the ALJ considered these time constraints when crafting the RFC finding and associated hypothetical questions for the VE.[15] The Court therefore finds that remand is warranted for a new RFC finding during the Relevant Period.

## V.    CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled after March 21, 2014 and remands the case for further proceedings in accordance with the accompanying Order.


Dated:   August 16, 2019                     _____s/ Paul A. Zoss_____
At Newark, New Jersey                        PAUL A. ZOSS, U.S.M.J.

---

[15] Plaintiff testified that she voluntarily placed herself into the IOP after experiencing hallucinations about her daughter and the apartment building manager that made Plaintiff afraid to leave the apartment. As explained in the ALJ's decision, Plaintiff did well in group sessions. She was scheduled to resume monthly outpatient therapy (IOP) in March 2016.